IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

WILLIAM HYTER, *et al.*,

               Plaintiffs,

vs.

FREEDOM ARMS, INC., *et al.*,

               Defendants.

Case No. 3:19-cv-00292-JMK

**ORDER RE DEFENDANTS'
MOTION *IN LIMINE* AND
PARTIES' CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

        Defendant Freedom Arms, Inc. ("Freedom Arms"), moved *in limine* to preclude Plaintiffs William and Sandra Hyter's ("Plaintiffs" or "the Hyters") expert, Jack Belk, at Docket 63, and for summary judgment on the Hyter's claims, at Docket 64. Plaintiffs responded in opposition to summary judgment at Docket 74 and cross-moved for summary judgment in their favor at Docket 75. All three motions are fully briefed.[1] The Court took the motions under advisement after hearing oral argument on May 31, 2023.

        As explained below, the Court **GRANTS** Freedom Arms' *Motion in Limine,* **GRANTS IN PART AND DENIES IN PART** Freedom Arms' *Motion for Summary Judgment*, and **DENIES** Plaintiffs' *Cross-Motion for Summary Judgment.*

---

    [1] Docket 72; Docket 83; Docket 93; Docket 103; Docket 106.

# I.   BACKGROUND

The following facts are undisputed unless otherwise noted.

## A.   Freedom Arms Manufactures and Sells a Model 83 Revolver

Defendant Freedom Arms manufactures a Model 83 Revolver ("Model 83"): a powerful, "single action," five-shot revolver that fires a .454 Casull cartridge.[2]   A revolver is a type of handgun that incorporates a rotating cylinder.[3]   A "single action" revolver is a revolver that requires the user to manually cock the hammer before firing.[4]   This contrasts a "double action" revolver, which is designed so that the user can pull the trigger to cause the hammer to retract and then be released in order to fire.[5]

The .454 Casull cartridge used with the Model 83 was designed to allow an individual to defend themselves from large animals, such as bears, using a handgun.[6]   Accordingly, the cartridge generates significant pressure and recoil when fired, which the Model 83 is designed to accommodate.[7]   The forces generated are atypical for a handgun and are more akin to those generated by high-intensity rifle cartridges.[8]

The Model 83 incorporates a manual safety, which prevents the weapon from firing when activated.[9]   A user activates the safety by drawing back the hammer into the

---

[2]  Docket 64-3 at 2.
[3]  *Id.* at 16:5–8.
[4]  *Id.* at 28:6–8, 17–21.   The gun is fired when the hammer is released from a cocked position and strikes the firing pin, causing discharge.
[5]  *Id.* at 28:12–16.
[6]  Docket 64-4 at 4.
[7]  *Id.*
[8]  *Id.*
[9]  *Id.*

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                         Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment                Page 2
Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 2 of 35

"safety bar" or "safety notch" position.[10]  A "hammer block" is then moved into position to block the hammer from striking the firing pin and discharging the weapon.[11]

The Model 83 is sold with a manual included.[12]  Freedom Arms also makes this manual available online or by mail or telephone.[13]  The manual contains warnings and instructions for the safe use of the Model 83[14] and has included similar warnings and instructions since before 1990.[15]

Within its first several pages, the manual explains eight different warnings in bold, capitalized letters.[16]  Throughout, the manual repeatedly warns users in bold and capitalized text to "never handle your Casull revolver with a live cartridge in the cylinder chamber which is in line with the barrel and firing pin, until you are fully prepared to shoot at your target" and "[i]n the field never carry the revolver with a live cartridge in the chamber which is in line with the barrel and firing pin."[17]  The manual also includes step-by-step instructions on how to engage the "hammer block" safety.[18]

Finally, the manual includes a description of the warranty and a card that an individual can use to register their firearm.[19]  In a section titled "Limited Warranty," the manual provides that Freedom Arms "warrants to the original retail purchaser of the

---

[10]  *Id.*
[11]  *Id.*; Docket 64-2 at 120:8–14; Docket 64-9.
[12]  *See* Docket 64-3 (exemplar manual).
[13]  Docket 64-2 at 52:6–12.
[14]  *See* Docket 64-3.
[15]  Docket 64-2 at 43:23–44:3.
[16]  Docket 64-3 at HY-FA-00337–40.
[17]  *Id.* at HY-FA-00338–42.
[18]  *Id.* at HA-FY-00342.
[19]  *Id.* at HA-FY-00349.

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                    Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment          Page 3
Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 3 of 35

[Model 83], that the firearm purchased shall be free from defects in material and workmanship under normal use and service" for the applicable warranty period.[20] The warranty provision then defines "original retail purchaser" as "the person who first purchased the firearm in a new and unused condition from a retail dealer."[21] Furthermore, the warranty specifies limits, including that the "written limited warranty is made expressly in lieu of any other warrants, express or implied, including any implied warranty of merchantability of fitness for a particular purpose . . . ."[22]

## B.    Mr. Hyter Purchased a Used Model 83

Plaintiff William Hyter purchased a used Freedom Arms Model 83, Serial number DF 3668, from the private collection of the owner of the Boondocks Sporting Goods and Outfitter in Eagle River, Alaska.[23] The manufacturer, Freedom Arms, originally sold the handgun to Boondocks Sporting Good and Outfitter in March 1990, shortly after it was manufactured.[24] Mr. Hyter chose to purchase a Model 83 in particular because he wanted a large caliber handgun for bear protection.[25] Although the firearm had been fired prior to Mr. Hyter's purchase, the seller represented that it was "like new."[26] When Mr. Hyter purchased the Model 83, he did not receive a manual, box, or any other materials, and the seller did not provide him any information as to the weapon's function.[27]

---

[20] *Id.* at HY-FA-00346.
[21] *Id.*
[22] *Id.* at HY-FA-00348.
[23] Docket 63-8 at 75:3–77:9.
[24] Dockets 64-10, 64-11.
[25] Docket 64-8 at 37:14–16; 54:12–16.
[26] *Id.* at 55:6–8.
[27] *Id.* at 60:18–24, 58:5–7.

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                    Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment          Page 4

Case 3:19-cv-00292-JMK    Document 116    Filed 11/22/23    Page 4 of 35

After purchasing the Model 83, Mr. Hyter never sought to obtain a manual from Freedom Arms or otherwise learn about the newly purchased weapon.[28]  However, he had some prior experience with firearms.  Now 74 years old, Mr. Hyter started using firearms around the age of 21 and learned firearm safety by word of mouth while hunting with others.[29]  He owns twelve other firearms, although none of them are "single action" revolvers.[30]

## C.    Mr. Hyter Suffered Serious Injuries When his Model 83 Discharged After Falling and Striking a Rock

On June 30, 2018, Mr. Hyter and his son were metal detecting in a rocky creek bed at Bertha Creek near Turnagain Pass on the Kenai Peninsula.[31]  Mr. Hyter carried the Model 83 in a shoulder holster for bear protection.[32]  All five chambers of the revolver were loaded with live rounds and Mr. Hyter carried the weapon with its safety disengaged and the hammer resting directly over a live cartridge.[33]  As Mr. Hyter and his son approached the creek bed, the snap that secured the handgun in Mr. Hyter's shoulder holster caught on some brush and came undone.[34]  Then, as he was metal detecting, Mr. Hyter bent over to move a rock in the creek bed, which caused the gun to fall out of

---

[28] *Id.* at 61:3–5, 72:3–22.
[29] *Id.* at 23:21–22, 29:11–14.
[30] *Id.* at 25:6–9, 26:13–17.
[31] *Id.* at 102:24–104:19, 108:22–23.
[32] *Id.* at 102:24–108:2.
[33] *Id.* at 115:2–4.
[34] *Id.* at 114:7–21.

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                    Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment                Page 5

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 5 of 35

the holster.[35]  The gun fell to the creek bed, struck a rock, and discharged, sending a bullet into Mr. Hyter's shoulder.[36]

## D.    Mr. and Mrs. Hyter File Suit

After his injury, on October 30, 2019, Mr. and Mrs. Hyter filed this action. In their Complaint, they asserted eight causes of action against the Defendants:  (1) strict liability, (2) failure to warn, (3) breach of implied and actual warranty, (4) failure to recall/retrofit, (5) violation of consumer protection laws, (6) ultra-hazardous activity, (7) negligence, and (8) punitive damages.[37]  Later, Plaintiffs withdrew their cause of action for "ultra-hazardous activity."[38]

## II.   LEGAL STANDARD

## A.    Admissibility of Expert Opinions

A motion *in limine* is "a procedural mechanism to limit in advance testimony or evidence in a particular area."[39]  A district court's power to rule on motions *in limine* arises out of its "inherent authority to manage the course of trials."[40]  Rulings on motions *in limine* are preliminary in nature, as a "district court may change its ruling at trial because testimony may bring facts to the district court's attention that it did not anticipate at the time of its initial ruling."[41]

---

[35] *Id.* at 112:7–10.
[36] *Id.* at 114:2–6, 115:6–116:2.
[37] Docket 1-1 at 6–9.
[38] Docket 57.
[39] *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009).
[40] *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984).
[41] *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *id.* at 41–42).

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                           Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment                    Page 6

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 6 of 35

The party who is the proponent of an expert's testimony has the burden of proving its admissibility.[42] The admissibility of expert opinions is controlled by Federal Rule of Evidence 702, which was modified after *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[43] and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert*, the Supreme Court articulated a two-step inquiry that a trial court, acting in its gatekeeping role, must undertake to determine if expert testimony is admissible.[44]

"First, the trial court must make a 'preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.'"[45] This "reliability" analysis is "a flexible one."[46] Courts may consider several factors, including "(1) 'whether a theory or technique can be tested'; (2) 'whether it has been subjected to

---

[42] *Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).
[43] 509 U.S. 579, 597 (1993).
[44] *United States v. Finley*, 301 F.3d 1000, 1007–08 (9th Cir. 2002).
[45] *Id.* at 1008 (quoting *Daubert*, 509 U.S. at 592–93)).
[46] *Specter v. Texas Turbine Conversions, Inc.*, 505 F. Supp. 3d 936, 943 (D. Alaska 2020) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1999)) *reconsideration denied by Specter v. Rainbow King Lodge, Inc.,* No. 3:17-cv-00194-TMB, 2020 WL 7396919 (D. Alaska Dec. 16, 2020).

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                    Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment          Page 7

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 7 of 35

peer review and publication'; (3) 'the known or potential error rate of the theory or technique'; and (4) 'whether the theory or technique enjoys general acceptance within the relevant scientific community.'"[47] Evidence is unreliable if it is based on "subjective belief or unsupported speculation."[48]

Second, the trial court "must ensure that the proposed expert testimony is relevant and will serve to aid the trier of fact."[49] "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry."[50]

Ultimately, "[w]hen an expert meets the threshold established by Rule 702 as explained in *Daubert,* the expert may testify and the jury decides how much weight to give that testimony."[51] "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion."[52]

## B. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[53] A material fact is one that "might affect the outcome of the suit under the

---

[47] *Id.* (quoting *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000)).
[48] *Daubert*, 509 U.S. at 590.
[49] *Finley*, 301 F.3d at 1008 (citing *Daubert*, 509 U.S. at 592–93)).
[50] *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).
[51] *Id.* at 565.
[52] *Id.* at 564.
[53] Fed. R. Civ. P. 56(a).

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                                          Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment                    Page 8
Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 8 of 35

governing law."[54]  "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[55]

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact.[56]  To establish that a fact cannot be genuinely disputed, the movant can either cite the record or show "that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[57]

Once the movant has made such a showing, the non-movant "bears the burden of production under [FRCP] 56 to 'designate specific facts showing that there is a genuine issue for trial.'"[58]  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[59]  A party cannot "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements."[60]

"If a moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything, even if the nonmoving party would

---

[54] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).
[55] *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,* 618 F.3d 1025, 1031 (9th Cir. 2010).
[56] *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).
[57] Fed. R. Civ. P. 56(c)(1).
[58] *Ricci v. DeStefano,* 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986)).
[59] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (internal citation omitted); *see also Liberty Lobby,* 477 U.S. at 252; *In re Oracle Corp. Secs. Litig.,* 627 F.3d 376, 387 (9th Cir. 2010) (specifying that the non-movant "must show more than the mere existence of a scintilla of evidence").
[60] *Hernandez v. Spacelabs Med. Inc.,* 343 F.3d 1107, 1112 (9th Cir. 2003).

*Hyter, et al. v. Freedom Arms, Inc., et al.*
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment
Case No. 3:19-cv-00292-JMK
Page 9

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 9 of 35

have the ultimate burden of persuasion at trial."[61]  Ultimately, in ruling on a motion for summary judgment, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party.[62]

"[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits."[63]  The court rules on each motion "on an individual and separate basis."[64]

## III.  DISCUSSION

### A.  Freedom Arm's Motion *in Limine* to Preclude Jack Belk

Freedom Arms argues that Mr. Belk's opinion should be precluded because he fails to provide a scientific or technical basis for his opinion.[65]  In particular, Freedom Arms asserts that Mr. Belk failed to provide a reliable basis for a factfinder to infer that his proposed design modifications could be incorporated into the Model 83,[66] that his opinion as to causation lacked a reliable methodology and ignored pertinent facts,[67] and that he is not qualified to render an opinion on certain topics.[68]  Further, Freedom Arms contends that Mr. Belk's opinion should be excluded under Federal Rule of Evidence 403, as its

---

[61] *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

[62] *Scott v. Harris,* 550 U.S. 372, 378 (2007).

[63] *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and quotation omitted).

[64] *Tulalip Tribes of Wash. v. Washington*, 783 F.3d 1151, 1156 (9th Cir. 2015) (quoting 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Fed. Prac. & Proc.* § 2720 (3d ed. 1998)).

[65] Docket 63 at 12–15.  The Court reviews Mr. Belk's initial report as it previously struck Mr. Belk's supplemental report.  Docket 102 (text order).

[66] Docket 63 at 12–15.

[67] *Id.* at 16–17.

[68] *Id.* at 18.

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                   Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment          Page 10
Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 10 of 35

prejudicial impact outweighs its probative value[69] and that Mr. Belk should be prevented from offering an opinion on irrelevant issues.[70]

Plaintiffs do not directly respond to each argument. Instead, in their opposition, they describe alleged design defects in the Model 83 and insist on the need for a jury determination in this case. They briefly suggest that one of the design modifications discussed by Mr. Belk—the transfer bar—could be included in the Model 83 because it is used in a similar Freedom Arms handgun, the Model 97, and other similar firearms.[71] And they assert in a footnote that Mr. Belk is qualified as an expert because he has provided expert testimony in other firearms cases, has developed gun patents, and authored a book about gun design.[72]

### 1. Mr. Belk's opinion regarding two specific design defects is not admissible

Mr. Belk's expert report identifies two alleged design defects in the Model 83: that it does not incorporate a "transfer bar" safety or a "cylinder gap" that allows a shooter to see whether the weapon is loaded.[73] As the party proffering Mr. Belk's expert testimony, Plaintiffs bear the burden of proving its admissibility.[74]

Freedom Arms attacks Mr. Belk's expert opinion that the Model 83 is defectively designed because "he has failed to utilize a reliable scientific or technical

---

[69] *Id.* at 18–19.
[70] *Id.* at 19.
[71] Docket 72 at 14, 16–17.
[72] *Id.* at 6 n.7.
[73] Docket 63-7 at 7–9.
[74] *Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996).

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                      Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment          Page 11

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 11 of 35

methodology as a basis" for his opinion.[75] In his expert report and deposition, Mr. Belk describes the method through which he reached his conclusions as to design defects.[76] Mr. Belk viewed the Model 83 that injured Mr. Hyter via Zoom video.[77] He also purchased an exemplar Model 83 and physically examined it.[78] Based on his physical examination and the features of the weapon, he concluded that there are three ways that the firearm could discharge without a pull of the trigger.[79] As relevant here, he concluded that the weapon could "drop fire"—that the gun could discharge if it was dropped while the hammer rested on the firing pin.[80]

Mr. Belk also discussed alternative designs for the Model 83 that he contends would eliminate or reduce the risk of the weapon firing without a pull of the trigger.[81] He examined a diagram of another Freedom Arms handgun, Model 97, and concluded that a "transfer bar" safety could be installed on the Model 83 because it was installed on the Model 97.[82] In his report, Mr. Belk writes,

> Examination of a parts diagram for the Model 97 Freedom Arms indicates it has a transfer bar. The transfer bar is contained in a similar slot in the hammer as the Model 83s [sic] hammer block safety and operates by action of the trigger in much the same as the manual 'safety notch' found in the Model 83. While dimensions and possibly minor details would be different, installing the Model 97 safety system into the

---

[75] Docket 63 at 12.
[76] Docket 63-7; Docket 63-2.
[77] Docket 63-7 at 1.
[78] *Id.* at 2–5.
[79] *Id.* at 5.
[80] *Id.*
[81] *Id.* at 6–9.
[82] *Id.* at 7.

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                    Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment          Page 12

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 12 of 35

Model 83 would make it as safe as other newly made single-action revolvers and safer than the present Model 83.[83]

He then concludes that "[i]t is practical and economically feasible to fit a similar trigger transfer bar safety into the Model 83" and that "[c]hanging the Model 83 to function as a Model 97 would make it a safer gun without sacrificing any of the inherent good features of the Model 83."[84]

Additionally, Mr. Belk suggested that the Model 83 should include a "cylinder gap" and noted that "other companies have adopted the 'rim space' cylinder because cartridge [sic] (rims) can be seen by the shooter without having to look into the front of the cylinder to assure [sic] it's loaded . . . ."[85]

Mr. Belk's conclusions that the Model 83 bears these two design defects must be precluded. The reliability prong of the *Daubert* inquiry requires trial courts to examine the methodology an expert uses in reaching a conclusion.[86] Although "experts commonly extrapolate from existing data," "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."[87] "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."[88] For example, another federal district court concluded that an expert's opinion as to a design defect failed to pass

---

[83] *Id.*
[84] *Id.* at 7, 9.
[85] *Id.* at 9.
[86] *Daubert,* 509 U.S. at 595 ("The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.").
[87] *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997).
[88] *Id.*

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                        Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment                    Page 13

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 13 of 35

muster under *Daubert* for a lack of an identifiable methodology where an expert concluded, without more, that one toaster oven was defective because it did not include a feature that other toaster ovens did.[89]

Here, Mr. Belk concludes that a "transfer bar" safety system incorporated into one Freedom Arms handgun could be feasibly and safely used on the Model 83. But, other than identifying that both firearms are structured similarly, he does not analyze why and how the safety system for one should be incorporated into the other. Accordingly, there is "too great an analytical gap between" the existence of another firearm with a transfer bar safety system and Mr. Belk's conclusion that the same system could be incorporated into the Model 83.[90] Additionally, this absence of analysis means that the Court simply cannot undertake the requisite "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid."[91]

Mr. Belk's opinion as to the lack of a "cylinder gap" suffers the same defect. Without more, the fact that a feature exists on one firearm does not support that the lack of its inclusion in another firearm constitutes a defect in the weapon's design.

Moreover, as Defendants point out, Mr. Belk's opinion that the Model 83 is defectively designed because it lacks a "cylinder gap" is not admissible, as it is not relevant.[92] Whether the weapon should have incorporated a "cylinder gap" so that a user could safely visually confirm that the weapon was loaded will not "aid the trier of fact" in

---

[89] *See Booth v. Black & Decker, Inc.*, 166 F. Supp. 2d 215, 221 (E.D. Pa. 2001).
[90] *Id.*
[91] *Daubert*, 509 U.S. at 592–93.
[92] Docket 63 at 19–20.

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                    Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment                    Page 14

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 14 of 35

this case.[93]  The issue is of no consequence in determining the action, as Mr. Hyter admits that he knew that the gun was loaded prior to his injuries.[94]  Therefore, Plaintiffs have failed to carry their burden of proving the admissibility of Mr. Belk's testimony as to these design defects.

### 2.    Plaintiffs have not carried their burden of showing Mr. Belk's causation opinion is admissible

Next, Defendants argue that Mr. Belk should be precluded from testifying that any alleged defect caused Mr. Hyter's injury because he did not use any methodology to evaluate causation.[95]

It is not true that Mr. Belk did not use any methodology to evaluate causation in this case.  His report and testimony at the Court's *Daubert* hearing make clear that he examined an exemplar Model 83, viewed the subject Model 83 in photos and via Zoom, reviewed a factual narrative of the incident, and drew conclusions about what occurred based on his experience working with firearms and the features of the Model 83.[96]

Although Mr. Belk did use some methodology to evaluate causation in this case, his opinion must be excluded.  Under *Daubert*, the court acts as a gatekeeper and "ensure[s] that any and all scientific testimony or evidence admitted is not only relevant, but reliable."[97]  Ultimately, it is the party seeking to admit an expert's testimony that bears

---

[93]  *United States v. Finley*, 301 F.3d 1000, 1008 (9th Cir. 2002) (citing *Daubert*, 509 U.S. at 592–93)).

[94]  Docket 63-8 at 65:9–15.

[95]  Docket 63 at 16–17.

[96]  *See* Docket 63-7.

[97]  *Daubert*, 509 U.S. at 589.

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                    Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment          Page 15

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 15 of 35

the burden of proving its admissibility.[98]  Plaintiffs fail to do so here.  Although the Court

can understand the methodology Mr. Belk uses to arrive at his conclusion as to causation

– inferring from the features of the firearm and the facts based on his technical experience

– Plaintiffs have not demonstrated that this is a reliable methodology that may be presented

to a jury.  Their assertion that Mr. Belk has been qualified as an expert in other cases does

not speak to the reliability of the opinions he offers in this matter.

### 3.  The Court declines to preclude an opinion as to the adequacy of warnings that has not been proffered

Defendants argue that Mr. Belk should be precluded from offering an opinion

as to the adequacy of warnings accompanying the Model 83 revolver because he is not

qualified to opine on the issue.[99]

A witness may be "qualified as an expert by knowledge, skill, experience,

training, or education . . . ."[100]  The Rule "contemplates a broad conception of expert

qualifications" and "is broadly phrased and intended to embrace more than a narrow

definition of qualified expert."[101]

Mr. Belk disclaims that he offers such an opinion in this matter and a review

of his expert report yields no indication that he intends to do so.[102]  The Court declines to

prospectively preclude an opinion that has not been offered.  Should Mr. Belk seek to

testify to the adequacy of warnings at trial, Defendants may raise an objection.

---

[98]  *Lust By & Through Lust*, 89 F.3d at 598.
[99]  Docket 63 at 18.
[100]  Fed. R. Evid. 702.
[101]  *Thomas v. Newton Int'l Enterprises*, 42 F.3d 1266, 1269 (9th Cir. 1994).
[102]  Docket 63-2 at 12:7–22; *see generally* Docket 63-7.

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                    Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment          Page 16
Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 16 of 35

#### 4. Mr. Belk may not testify about the Model 83 lack of "cylinder gap" or ways in which the Model 83 can discharge without a trigger pull

Additionally, Defendants contend that Mr. Belk has disclosed multiple opinions that are not relevant and should be precluded from testifying as to those subjects.[103] In particular, they argue that Mr. Belk's opinions as to the lack of a "cylinder gap" and the possibility of the Model 83 firing without a trigger pull are irrelevant.[104]

Above, the Court determined that Mr. Belk's opinion regarding the Model 83's lack of a "cylinder gap" is irrelevant and that his opinion with respect to causation—including how a "drop fire" could have caused Mr. Hyter's injuries—has not been proven reliable. With respect to Mr. Belk's opinion that it is possible for the Model 83 to fire without a trigger pull, the Court agrees that Mr. Belk's opinion that the Model 83 can fire if it is impacted when held or if the hammer is snapped back and released are not relevant in this action. There is no dispute that Mr. Hyter's Model 83 discharged when it was dropped and struck a rock. Thus, Mr. Belk's opinion that the Model 83 has the potential to "drop fire" is relevant. However, his opinions regarding the other ways in which the Model 83 could fire without a trigger pull are not relevant.

#### 5. The Court declines to further limit Mr. Belk's opinion on Rule 403 grounds

Finally, Defendants assert that Mr. Belk's opinions should be excluded under Federal Rule of Evidence 403 as they are unfairly prejudicial, risk confusing the issues,

---

[103] Docket 63 at 19–20.
[104] Id.

Hyter, et al. v. Freedom Arms, Inc., et al.                                    Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment          Page 17
Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 17 of 35

and may mislead a jury.[105]  They argue that Mr. Belk's unsupported opinions will invite the jury to speculate and improperly analyze the issues.[106]  Having substantially narrowed what opinions Mr. Belk may offer, the Court declines, at this time, to further restrict Mr. Belk's testimony on Rule 403 grounds.  Of course, Defendants are free to reassert any Rule 403 objections they deem warranted during Mr. Belk's trial testimony.

## B.      Freedom Arm's Motion for Summary Judgment

Freedom Arms asserts that summary judgment dismissing each of Plaintiffs' claims is appropriate.  In brief, it argues that Plaintiffs fail to produce evidence establishing their claims or that the claims fail as a matter of law.  Plaintiffs insist that disputes of material fact exist, and summary judgment is not appropriate.

The Court examines each of the claims in turn.

### 1.      Plaintiffs' strict liability and failure to warn claims

Freedom Arms argues that Plaintiffs' claim that they are strictly liable for Mr. Hyter's injuries should be dismissed because Plaintiffs have not produced evidence sufficient to support a finding that the Model 83 was defective or that Freedom Arms failed to warn about risks associated with the weapon.[107]

A manufacturer "is strictly liable in tort when an article he places on the market, knowing that it is to be used without inspection for defects, proves to have a defect

---

[105] *Id.* at 18–19.
[106] *Id.*
[107] Docket 64 at 16–24.

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment          Page 18
Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 18 of 35

that causes injury to a human being."[108] "A product may be defective because of a manufacturing defect, a defective design, or a failure to contain adequate warnings."[109] The Court considers together Plaintiff's first count, strict liability, and their second count, failure to warn.

*First*, Freedom Arms argues, and Plaintiffs concede, that there is no evidence of a manufacturing defect in this case.[110] Accordingly, to the extent that Plaintiffs claim that Freedom Arms is strictly liable due to a manufacturing defect, that claim fails.

*Second*, Freedom Arms argues that Plaintiffs cannot establish the Model 83 was defectively designed under either consumer expectations or risk utility tests because they have produced no admissible expert evidence in support of their design defect claim and because Mr. Hyter's use of the Model 83 was not reasonably foreseeable.[111] Plaintiffs respond that summary judgment is not appropriate under either test.[112] Plaintiffs assert that they have produced evidence which establishes a claim for design defect.[113] Plaintiffs argue that the evidence that the handgun could discharge without a trigger pull and that it does not incorporate a "transfer bar" safety system creates a dispute of material fact.[114]

---

[108] *Clary v. Fifth Avenue Chrysler Centers, Inc.*, 454 P.2d 244, 247 (Alaska 1969) (quoting *Greenman v. Yuba Power Products, Inc.*, 377 P.2d 897, 900 (Cal. 1962)).
[109] *Shanks v. Upjohn Co.*, 835 P.2d 1189, 1194 (Alaska 1992).
[110] Docket 64 at 17–18; Docket 74 at 7.
[111] Docket 64 at 18–21.
[112] Docket 72 at 18–19.
[113] Docket 74 at 7–9.
[114] *Id.* at 2–3.

*Hyter, et al. v. Freedom Arms, Inc., et al.*    Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment    Page 19

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 19 of 35

Under Alaska law, courts apply a two-pronged test for finding a defect in design cases.[115] "[T]he factfinder can find a product defective either if the plaintiff demonstrates that the product failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner [consumer expectation test] . . . or if the plaintiff proves that the product's design proximately caused his injury and the defendant fails to prove . . . that on balance the benefits of the challenged design outweighed the risk of danger inherent in such design [risk utility test]."[116]

The Alaska Supreme Court noted that it adopted the consumer expectations test in *Caterpillar Tractor Company v. Beck* partially because it "incorporates notions of the implied warranty of fitness for reasonable use" which requires that goods "be fit for the ordinary purposes for which the goods are used."[117] Accordingly, the test requires a factfinder to determine whether the product is "unfit for ordinary use."[118] At summary judgment, the Court only evaluates whether the plaintiff has adduced enough evidence that a material fact exists as to consumer expectations and a jury could permissibly come to the conclusion that the product at issue is unfit for ordinary use.

Plaintiffs have met that bar in this case. The Court has precluded Mr. Belk from testifying as to his conclusions that the Model 83 was defective because it failed to include certain design elements and that a defect caused Mr. Hyter's injury. However, a

---

[115] *Gen. Motors Corp. v. Farnsworth*, 965 P.2d 1209, 1220 (Alaska 1998) (citing *Caterpillar Tractor Co. v. Beck,* 593 P.2d 871 (Alaska 1979)).
[116] *Id.*
[117] *Id.* at 1221 (internal quotations and citations omitted).
[118] *Id.*

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                           Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment          Page 20

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 20 of 35

genuine dispute exists to whether the Model 83 has the potential to "drop fire" and whether that possibility constitutes a design defect under the consumer expectations test.

The absence of expert testimony regarding defect and causation does not doom this claim. Expert testimony is not required to satisfy the consumer expectations test for a design defect.[119] In fact, "[t]he consumer expectation test disfavors expert testimony, and asks instead whether a layperson's common experience would indicate that the product was defective."[120] Therefore, Plaintiffs may proceed without expert evidence and a jury could permissibly conclude that a handgun that discharges without a pull of the trigger when dropped is unfit for ordinary use or that the product failed to perform as safely as an ordinary consumer would expect.

Freedom Arms argues that Plaintiffs fail the consumer expectations test because Mr. Hyter did not use the Model 83 in a reasonably foreseeable manner.[121] In their view, had he read the manual, Mr. Hyter would not have carried the weapon with the hammer down behind a live round, and he would have used the manual safety.[122] Plaintiffs

---

[119] *See Massok v. Keller Indus., Inc.*, 147 F. App'x 651, 660 (9th Cir. 2005) ("[U]nder *Soule*, no expert testimony is required to proceed under the consumer expectations test and Campbell instructs that a plaintiff may reach a jury on nothing more than his own testimony and evidence of the "objective conditions of the product."); *Gen. Motors Corp. v. Farnsworth*, 965 P.2d 1209, 1221 (Alaska 1998) (adopting California's approach to the consumer expectations test as described in *Soule v. General Motors Corp.*, 882 P.2d 298, 310 (Cal. 1994)).

[120] *In re Crash of Aircraft N93PC on July 7, 2013, at Soldotna, Alaska*, No. 3:15-cv-0112-HRH, 2021 WL 2641206, at *1 (D. Alaska June 25, 2021) (internal quotations and citations omitted).

[121] Docket 64 at 18.

[122] *Id.*

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                        Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment          Page 21

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 21 of 35

respond that a "normal Alaskan" using the weapon for bear protection would carry the weapon in the same way Mr. Hyter did.[123]

Freedom Arms has failed to establish that no genuine issue of facts exists as to whether Mr. Hyter's use was reasonably foreseeable. That the manual warns users not to use a product in a particular way does not, in and of itself, indicate that such use is not foreseeable. Mr. Hyter's deposition also indicates that an individual carrying a handgun for bear protection might foreseeably carry the Model 83 in a similar way to be prepared to confront large animals.[124]

Ultimately, Plaintiffs' strict liability claim survives summary judgment and may be presented to the jury because genuine issues of fact exist as to whether the Model 83 is defective under the consumer expectations test because it can "drop fire," and whether Mr. Hyter's use of the handgun was reasonably foreseeable.

However, Plaintiffs may not present a case based on a risk-utility. Plaintiffs argue that a "passive safety" such as a "transfer bar" would eliminate the risk of accidental discharge and still provide use benefits.[125] But they do not cite admissible supporting evidence.

Freedom Arms argues that "on balance the benefits of the challenged design outweighed the risk of danger inherent in such design" because the Model 83 is designed to accommodate the use of a high-pressure cartridge so that users can use the weapon for

---

[123] Docket 74 at 8.
[124] Docket 64-8 at 65:9–20.
[125] Docket 72 at 19–20.

*Hyter, et al. v. Freedom Arms, Inc., et al.*        Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment    Page 22
Case 3:19-cv-00292-JMK    Document 116    Filed 11/22/23    Page 22 of 35

defense against large game.[126] Freedom Arms produces evidence that there are benefits of this design—that users can effectively use the weapon for protection against large game—and risks associated with a "passive safety" like a "transfer bar" as such a mechanism may fail in a way that leaves users unaware.[127] Moreover, given the Court's evidentiary rulings, Plaintiffs cannot show that a design defect, such as the failure to include a passive safety, proximately caused their injuries, which is required under the risk-utility test. As such, Freedom Arms' evidence that the benefits of the design of its Model 83 outweighs any inherent risks goes unchallenged and summary judgment dismissing a strict liability claim on a risk-utility theory is appropriate.

*Third*, Freedom Arms asserts that Plaintiffs failed to produce evidence that supports a claim for failure to warn.[128] Plaintiffs respond that Freedom Arms' warnings were not directed at the individuals who purchased the Model 83 in secondary markets.[129]

Under a failure to warn theory of liability, a product is defective if it poses a risk of injury when used in a reasonably foreseeable manner but is marketed without adequate warnings of that risk.[130] "If such a defect is the proximate cause of the plaintiff's injuries, the manufacturer is strictly liable unless the defendant manufacturer can prove that the risk was scientifically unknowable at the time the product was distributed to the plaintiff."[131] A warning is adequate if it "1) clearly indicate[s] the scope of the risk or

---

[126] Docket 64 at 19.
[127] Docket 64-2 at 53:4–21, 152:3–7, 153:14–18; Docket 64-4 at 4–5.
[128] Docket 64 at 21–24.
[129] Docket 72 at 19–20.
[130] *Shanks*, 835 P.2d at 1199–1200.
[131] *Id.*

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                    Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment                Page 23

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 23 of 35

danger posed by the product; 2) reasonably communicate[s] the extent or seriousness of harm that could result from the risk or danger; and 3) [is] conveyed in such a manner as to alert the reasonably prudent person."[132]

In this case, Freedom Arms' warnings were adequate. In its manual, Freedom Arms repeatedly warns users in bold and capitalized text to "never handle your Casull revolver with a live cartridge in the cylinder chamber which is in line with the barrel and firing pin, until you are fully prepared to shoot at your target" and "[i]n the field never carry the revolver with a live cartridge in the chamber which is in line with the barrel and firing pin."[133] It further warns in capitalized letters that users "should never totally rely upon any mechanical safety device" and that "the revolver will fire if it is dropped or if the hammer is otherwise struck with sufficient force."[134] These warnings both clearly indicate the scope of risk and the extent or seriousness of the danger—that the handgun could fire a live round without a trigger pull. And they are conveyed in such a manner as to alert a reasonably prudent person. They are bold, capitalized, and repeated throughout the manual. And the manual is available online or will be shipped by the manufacturer at no cost after a call or letter.[135] A reasonably prudent person who purchased a handgun specifically designed to be even more deadly than a typical handgun would do some research or seek out a manual so that they could safely operate it. Plaintiffs cannot establish a genuine dispute of material fact as to Freedom Arms' failure to warn.

---

[132] *Id.* at 1200.
[133] Docket 64-3 at HY-FA-00338–42, HY-FA-00344–5.
[134] *Id.* at HY-FA-00339–40.
[135] Docket 64-2 at 52:6–12.

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                        Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment          Page 24
Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 24 of 35

In any case, Mr. Hyter has not shown his injuries were proximately caused by a lack of warning. Freedom Arms produces evidence that Mr. Hyter did not read the Model 83 manual, which was readily available to individuals who purchased the gun in secondary markets, and did not otherwise seek out information on the weapon.[136] It follows that Mr. Hyer's injuries are not causally related to the adequacy of warnings because he did not read or rely on those warnings. Mr. Hyter's injury would have occurred regardless of the adequacy of the warnings Freedom Arms issued.

Accordingly, Plaintiffs' Count I for strict liability may proceed on a consumer expectations theory. Summary judgment is warranted as to a strict liability claim under a risk-utility theory and as to Plaintiffs' Count II for failure to warn.

### 2. Plaintiffs' breach of warranties claim

Freedom Arms next argues that Plaintiffs' breach of warranty claim should be dismissed because the company made no representations or warranties to Mr. Hyter that could support such a claim.[137] It further argues that, in the alternative, it disclaimed or limited any express or implied warranties.[138] Plaintiffs respond, without citation, that public policy precludes a party from contracting away implied warranties.[139]

Under Alaska statute, a seller can create an express warranty in three ways, by "(1) an affirmation of fact or promise made by the seller to the buyer that relates to the goods and becomes part of the basis of the bargain creates an express warranty that the

---

[136] Docket 64-8 at 60:18–24, 58:5–7, 61:3–5, 72:3–22.
[137] Docket 64 at 25.
[138] *Id.*
[139] Docket 74 at 10–11.

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                          Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment          Page 25

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 25 of 35

goods shall conform to the affirmation or promise; (2) a description of the goods that is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description; [or] (3) a sample or model that is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model."[140]

Here, Freedom Arms never communicated with Mr. Hyter, who bought the Model 83 from the private collection of a gun store owner.[141]  Therefore, it made no "affirmation of fact or promise" to Mr. Hyter and did not provide him "a description of the goods" or a "sample or model."  It never created an express warranty as to the Model 83.  Mr. Hyter's breach of warranty claim thus fails insofar as it is based on an express warranty.

Furthermore, even assuming Freedom Arms created an express warranty, that warranty would have expired long ago as it was explicitly limited to one year after purchase.[142]  Evidence shows that Mr. Hyter purchased the Model 83 well over 30 years prior to the incident.[143]

Plaintiffs' claim for breach of implied warranty also fails.  A manufacturer may exclude or modify the implied warranties of merchantability and fitness by a conspicuous writing.[144]  Therefore, no implied warranty existed here, as Freedom Arms conspicuously modified all implied warranties in its readily-available manual.  In the

---

[140] Alaska Stat. § 45.02.313(a).
[141] Docket 64-8 at 49:3–6.
[142] Docket 64-3 at HY-FA-00348.
[143] Docket 64-8 at 52:4–13.
[144] Alaska Stat. § 45.02.316(b).

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                                    Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment                Page 26
Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 26 of 35

manual's limited warranty provision, Freedom Arms provided that its "written limited warranty is made expressly in lieu of any other warrants, express or implied, including any implied warranty of merchantability of fitness for a particular purpose . . . ."[145]

Summary judgment as to Plaintiffs' claim for breach of warrant is appropriate. Plaintiffs' Count III is **DISMISSED**.

### 3. Plaintiffs' claim for failure to recall or retrofit

Freedom Arms asserts that summary judgment dismissing Plaintiffs' claim for failure to recall or retrofit is appropriate as Alaska courts do not recognize a duty to recall.[146] Plaintiffs respond that Alaska law is clear that manufacturers have "a post-sale duty to inform consumers of its products of dangers that became apparent after sale when the danger is potentially life-threatening."[147] Furthermore, they argue that Freedom Arms had a pre-sale duty to include state-of-the-art technological developments to prevent injury.

Summary judgment in favor of Freedom Arms is appropriate as to Plaintiffs' claim for failure to recall or retrofit. There is no duty for a manufacturer to recall a product under Alaska law.[148] And, although a post-sale duty to warn exists under Alaska law, it is a separate cause of action, which the Plaintiffs have not alleged.[149] Finally, the pre-sale duty to include state-of-the-art technological developments to which Plaintiffs refer, is merely a rephrasing of a strict liability claim for design defect, which the Court has

---

[145] Docket 64-3 at HY-FA-00348.
[146] Docket 64 at 28.
[147] Docket 74 at 11–12; *Jones v. Bowie Indus., Inc.*, 282 P.3d 316, 334 (Alaska 2012).
[148] *Jones v. Bowie Indus., Inc.*, 282 P.3d 316, 335 n.70 (Alaska 2012).
[149] *Blake v. Guthy-Renker, LLC*, 965 F. Supp. 2d 1076, 1085 (D. Alaska 2013); Docket 1.

*Hyter, et al. v. Freedom Arms, Inc., et al.*     Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment     Page 27

Case 3:19-cv-00292-JMK     Document 116     Filed 11/22/23     Page 27 of 35

addressed above. Accordingly, Plaintiffs' Count IV, their claim for failure to recall or retrofit, is **DISMISSED**.

### 4. Plaintiffs' claim under federal and state consumer protection laws

Freedom Arms contends that Plaintiffs' claim that it violated federal and state consumer protection laws fails because Plaintiffs have not identified any laws which Freedom Arms violated and the record does not support the existence of any unfair conduct.[150] In their opposition, Plaintiffs indicate they wish to withdraw this claim.[151] Summary judgment as to this claim therefore is warranted. Plaintiffs' Count V, their consumer protection claim, is **DISMISSED**.

### 5. Plaintiffs' ultrahazardous activity claim

Plaintiffs have withdrawn their ultrahazardous activity claim.[152] Summary judgment as to this claim therefore is warranted. Plaintiffs' Count VI, their ultra-hazardous activity claim, is **DISMISSED**.

### 6. Plaintiffs' negligence claim

Freedom Arms argues that summary judgment disposing of Plaintiffs' negligence claim is appropriate. First, it contends that there can be no negligence when a manufacturer is selling a non-defective product, and the Model 83 is not defective.[153] Second, they argue that they owed no duty to Mr. Hyter because his use of the Model 83

---

[150] Docket 64 at 28–29.
[151] Docket 74 at 12.
[152] Docket 57.
[153] Docket 64 at 29.

*Hyter, et al. v. Freedom Arms, Inc., et al.*     Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment     Page 28

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 28 of 35

was not foreseeable.[154]  And, third, they point out that Plaintiffs have not provided any expert testimony that indicates the standard of care required of a firearms manufacturer.[155] Plaintiffs do not directly respond.

Plaintiffs' negligence claim fails because they have not produced expert testimony related to the standard of care in this case.  Expert testimony that establishes the standard of care "is not a general requirement of all professional negligence actions, especially in non-technical situations where negligence is evident to lay people."[156] However, this case does not fall into that category.  Determining the standard of care that applies to a manufacturer of firearms is inherently technical and beyond the ken of the average juror.  Summary judgment is appropriate as to Plaintiffs' negligence claim, as their expert's report does not purport to establish a standard of care.  Plaintiffs' Count VII, their negligence claim, is **DISMISSED**.

## 7.    Punitive damages

Finally, Freedom Arms argues that Plaintiffs may not seek punitive damages because they have not produced any evidence that it acted with malice.[157]  Plaintiffs respond that the existence of other cases relating to product defects that are like those alleged here put Freedom Arms on notice of the defect in the Model 83, and its refusal to modify its design represents reckless indifference.[158]

---

[154] *Id.* at 30.

[155] *Id.*

[156] *Johnson & Higgins of Alaska Inc. v. Blomfield,* 907 P.2d 1371, 1374 (Alaska 1995) (internal citations and quotations omitted).

[157] Docket 64 at 30–31.

[158] Docket 74 at 13–14.

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                                    Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment            Page 29

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 29 of 35

To recover punitive damages, "the plaintiff must prove by clear and convincing evidence that the defendant's conduct was outrageous, such as acts done with malice, bad motives, or reckless indifference to the interests of another."[159]  Punitive damages "are a harsh remedy not favored in law."[160]  "[W]here there is no evidence that gives rise to an inference of actual malice or conduct sufficiently outrageous to be deemed equivalent to actual malice, the trial court need not, and indeed should not, submit the issue of punitive damages to the jury."[161]

Plaintiffs have not produced evidence that meets this high standard. Plaintiffs argue that Freedom Arms was on notice that the Model 83 could discharge without a trigger pull and its failure to incorporate a passive safety shows reckless indifference to the potential that users could be injured.  But the record shows the handgun's "hammer block" manual safety would have reduced the chance of this type of discharge if it had been engaged.[162]  And Plaintiffs have produced no evidence that the manufacturer's choice of one safety over another was made in bad faith, especially given the absence of expert testimony that indicates the passive safety which Plaintiffs contend Freedom Arms recklessly failed to incorporate could function on the Model 83.  There is therefore an absence of dispute of fact as to whether Freedom Arms' failure to incorporate

---

[159] *Robles v. Shoreside Petroleum, Inc.*, 29 P.3d 838, 846 (Alaska 2001).
[160] *Chizmar v. Mackie*, 896 P.2d 196, 210 (Alaska 1995).
[161] *State Farm Mut. Auto. Ins. Co. v. Weiford*, 831 P.2d 1264, 1266 (Alaska 1992) (internal citations and quotations omitted).
[162] Docket 64-2 at 55:2–7.

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                          Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment          Page 30

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 30 of 35

a "transfer bar" safety was recklessly indifferent to the interests of others, and punitive damages are inappropriate. Plaintiffs may not seek punitive damages.

In sum, and in accordance with the Court's reasoning herein, Freedom Arms' *Motion for Summary Judgment* is **GRANTED IN PART** and **DENIED IN PART**. Plaintiffs' strict liability claim remains.

## C. Plaintiffs' Cross-Motion for Summary Judgment

Plaintiffs cross-move for summary judgment in their favor, arguing that a final judgment in a case against Freedom Arms in Ohio dictates the outcome of their design defect claim.[163] Additionally, they argue that summary judgment in their favor is warranted with respect to their failure to retrofit or recall claim, breach of warranties claim, the issue of causation, their negligence claim, their strict liability claim, and the issue of punitive damages. Freedom Arms responds that Plaintiffs misstate and misapply the doctrines of claim and issue preclusion.[164] As explained below, Plaintiffs' Cross-Motion is **DENIED** in its entirety.

### 1. Issue preclusion does not dictate the outcome of Plaintiffs' design defect claim

First, Plaintiffs argue that collateral estoppel (issue preclusion) determines the issue of product defect in this case.[165] Freedom Arms respond that issue preclusion

---

[163] Docket 75.
[164] Docket 103 at 12.
[165] Docket 75 at 11–14.

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                          Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment                Page 31
Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 31 of 35

does not apply because Ohio law regarding issue preclusion applies and requires mutuality of parties.[166]

Issue preclusion "precludes relitigation of an issue already litigated and determined in a previous proceeding between the same parties."[167] "[F]ederal courts must give state court judgments the preclusive effect that those judgments would enjoy under the law of the state in which the judgment was rendered."[168] In this case, Plaintiffs ask the Court to give preclusive effect to a judgment issued in an Ohio court.[169] Therefore, the Court applies Ohio law.

Under Ohio law, a party seeking to apply issue preclusion offensively must demonstrate mutuality of parties, or that all the parties to the present proceeding were bound by the prior judgment.[170] The Court in *Goodson* was crystal clear that mutuality is required for issue preclusion "in actions involving issues of design negligence or defective design of mass-produced products particularly when the former adjudication of the issues arose out of a separate underlying incident."[171]

Plaintiffs seek to apply issue preclusion offensively against Freedom Arms and thus must demonstrate mutuality. They cannot do so as the judgment in *Taylor v. Freedom Arms* arose out of a separate underlying incident involving a different plaintiff.

---

[166] Docket 103 at 14–17.
[167] *Pike v. Hester*, 891 F.3d 1131, 1138 (9th Cir. 2018).
[168] *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 993 (9th Cir. 2001) (citing 28 U.S.C. § 1738).
[169] Docket 75 at 11 (asking the court give preclusive effect to *Taylor v. Freedom Arms, Inc.*, 2009-Ohio-6091, 2009 WL 3863123 (Ohio Ct. of App. 2009)).
[170] *Goodson v. McDonough Power Equip., Inc.*, 443 N.E.2d 978, 987 (Ohio 1983).
[171] *Id.*

*Hyter, et al. v. Freedom Arms, Inc., et al.*
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment
Case No. 3:19-cv-00292-JMK
Page 32

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 32 of 35

## 2. Claim preclusion does not determine Plaintiffs' design defect claim

Plaintiffs also assert that the doctrine of res judicata (claim preclusion) determines their design defect claim.[172] Freedom Arms responds that claim preclusion is inapplicable because the case Plaintiffs assert has preclusive effect did not arise out of the same nucleus of facts as this case.[173]

"Res judicata, or claim preclusion, prohibits lawsuits on any claims that were raised or could have been raised in a prior action."[174] "Res judicata applies when there is: (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties."[175] "The central criterion in determining whether there is an identity of claims between the first and second adjudications is whether the two suits arise out of the same transactional nucleus of facts."[176]

Claim preclusion does not apply as the claims in this matter do not arise from the same nucleus of facts as those in *Taylor v. Freedom Arms* and could not have been raised in that action. In *Taylor*, the plaintiff sued Freedom Arms after his Model 83 discharged when, during the process of removing a heavy coat, material caught the revolvers hammer, partially drawing it back and releasing it.[177] This case arises from an entirely separate and unrelated incident.

---

[172] Docket 75 at 11–14.
[173] Docket 103 at 13–14.
[174] *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002) (internal quotations and alterations omitted).
[175] *Id.* (internal quotations and alterations omitted).
[176] *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) (internal citation and quotations omitted).
[177] Docket 103-1 at 4; Docket 103-3 at ¶ 8.

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                    Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment          Page 33

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 33 of 35

### 3. Plaintiffs are not entitled to summary judgment on their duty to retrofit or recall claim

Plaintiffs argue that "summary judgment must be granted on their failure to recall, retrofit, or warn cause of action."[178]  However, as the Court discussed, no duty to retrofit or recall exists under Alaska law, and a post-sale duty to warn claim constitutes a separate claim which the Plaintiffs did not plead or seek to amend their complaint to include.  As a matter of law, Plaintiffs are not entitled to summary judgment on this claim.

### 4. Plaintiffs are not entitled to summary judgment on the issues of breach of warranties, causation, comparative fault, strict liability, negligence, or punitive damages

Plaintiffs also argue that summary judgment should be granted in their favor on these issues.[179]

With respect to each issue, they fail to cite or reference specific evidence in the record in support of their contentions, which are framed in conclusory terms.  Therefore, Plaintiffs simply do not meet their burden under Federal Rule of Civil Procedure 56 of establishing an absence of genuine dispute of material fact by citing to the record or showing the materials cited do not establish a genuine dispute.[180]  The Court cannot determine whether an absence of material fact exists because Plaintiffs fail to cite any factual material, or absence thereof, in the record from which a conclusion may be drawn.  Accordingly, summary judgment is denied as to these issues.

---

[178]  Docket 75 at 14.
[179]  *Id.* at 15–25.
[180]  Fed. R. Civ. P. 56(c)(1).

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                        Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment                Page 34

Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 34 of 35

## IV.   CONCLUSION

Freedom Arm's *Motion in Limine* is **GRANTED**.  Freedom Arm's *Motion for Summary Judgment* is **GRANTED IN PART AND DENIED IN PART**.  Plaintiffs' Cross-Motion for Summary Judgment is **DENIED**.

IT IS SO ORDERED this 22nd day of November, 2023, at Anchorage, Alaska.


_____ */s/ Joshua M. Kindred*_____
JOSHUA M. KINDRED
United States District Judge

*Hyter, et al. v. Freedom Arms, Inc., et al.*                                          Case No. 3:19-cv-00292-JMK
Order re Defendants' Motion *in Limine* and Parties' Cross-Motions for Summary Judgment                  Page 35
Case 3:19-cv-00292-JMK   Document 116   Filed 11/22/23   Page 35 of 35